# UNITED STATES DISTRICT COURT
## District of Kansas
(Wichita Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                           CASE NO.   25-10016-01-06-EFM

RAASHAD ROBINSON et al.,

        Defendants.

## EXPERT DISCLOSURE

**I.**    **ATF Special Agent Aaron Chaffee**

**Opinion:** Agent Chaffee will testify he assisted in the investigation of these cases and he will provide testimony concerning his actions in support of this investigation. In addition, ATF Special Agent Chaffee has reviewed reports prepared by other investigators and he has reviewed evidence gathered in this investigation to form opinions, based on the training and experience detailed in his report.   These opinions include, but are not limited to, the following: the manner in which controlled substances are distributed to Kansas and in Kansas; the type of controlled substances distributed in Wichita, Kansas; the manner in which

controlled substances are distributed in Wichita, Kansas; the prices controlled

substances are sold for in Wichita, Kansas, and the tools and equipment used;

terminology and coded language used in connection with the Wichita drug trade,

as well as additional opinions contained in his report.

**b.     Bases and Reasons for the Opinion:**   The agent's expert report, which

contains the bases for his opinions, is attached to this disclosure and incorporated

herein.

**c.     Qualifications:** The agent's Curriculum Vitae is attached hereto and

incorporated herein.

**d.     Previous Publications:** None

**e.     Previous Expert Testimony:**

2022  *United States District Court, Southern District of Iowa, Case No. 4:21-CR-075, United States v. Raekwon Malik Patton, et al.*, provided testimony on national and neighborhood gang culture, current trends, and differences between the two. How social media has influenced gangs, how social media is used to conduct gang business, and how social media is used to conduct drug business. How firearms are used with gangs and how firearms are used by drug dealers.

2022  *18th Judicial District, Sedgwick County Kansas Court Case No. 19CR1872, State of Kansas v. Erik Dixon, et al.*, provided testimony on national and local gangs culture (Respect, Revenge and Reputation) and differences between the two. How social media has influenced gangs, how social media/cellular telephones are used to conduct gang business, used to aide in communication about committing violent acts, and how social media is used to conduct drug business. How firearms are used with gangs and how firearms are used by drug dealers.

2025   *United States District Court, District of Kansas, Case No. 23-CR-10041-EFM, United States v. Marshall Green,* provided testimony how the drug business is conducted, and how firearms are used by drug dealers.


I, ATF Special Agent Aaron Chaffee, have read and approved this disclosure.

_____

AARON CHAFFEE
ATF Special Agent


Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney

/s/ Lanny D. Welch
LANNY D. WELCH, #13267
Assistant United States Attorney
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-269-6481
Lanny.Welch@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the  8th  day of October, 2025, I electronically filed the

foregoing Disclosure with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to all counsel of record.

<u>/s/ Lanny D. Welch</u>
LANNY D. WELCH
Assistant U.S. Attorney

**Qualifications and Expected Testimony of**

**Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)**

**Special Agent Aaron Chaffee**

**Training and Experience:**

1.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Agent.  I am empowered by Department of Justice to conduct investigations, to make arrests for offenses against the United States, and performs such other duties as authorized by law.

2.  I have been employed with the ATF since July 2015 and currently assigned to the Wichita Field Office.  Prior to joining the ATF, I was a police officer with the Wichita Police Department (WPD) for nearly 10 years.  As a Special Agent with ATF and/or police officer with WPD, I have received training in arson, explosives, firearms, violent crime, gang related investigations and drug trafficking investigations. As a Special Agent with ATF and/or WPD, I have conducted and/or participated in numerous investigations involving explosives, firearms, controlled substances, arsons, and violent crimes.

3.  I have been the lead investigator and/or assisted in numerous investigations which utilized confidential informants (CI's) and/or undercover (UC's) law enforcement personnel. These include investigations into individuals, organized groups of individuals distributing drugs in Kansas, as well as investigations into groups trafficking drugs and firearms throughout the country. In support of these investigations, I have conducted thousands of interviews/debriefs with gang members, suspects, witnesses, cooperating defendants, CI's and UC's into how the drug and firearm businesses operate. Additionally, I have received training in conducting large scale, multi-defendant complex criminal investigations. Throughout these investigations, I have become familiar with how individuals and organizations use computers, cellular telephones, and social media in their "criminal world" and in their networks. I have become aware that information stored by social media companies on behalf of its subscribers and users can assist law enforcement in criminal investigations. These investigations have resulted in the arrest and conviction of defendants for state and federal violations.

4.  Due to my education, training, and experience as a law enforcement officer dealing with gangs, violent crime, drugs, firearms, arsons, and social media, I have provided both formal and informal training to other law enforcement officials at the local, state, federal levels, as well as outside groups.

1

5.  I have previously been recognized as an expert in drug and gang investigations, and I have provided expert testimony regarding these subjects in both state and federal court.

**Prices and Quantities of Drugs:**

6.  Based upon my training, experience, communication with other law enforcement personnel, and interviews of numerous drug offenders, I have learned that the price and profits made by selling drugs, including but not limited to, counterfeit prescription pills, methamphetamine, heroin, and cocaine, can vary on several factors. Examples of these factors are, quantity purchased, availability of the drug, and trust of the coconspirators. Typically, the closer an individual is to the source of the supply, the cheaper the drugs are. This is due to the larger quantities that are typically purchased, with less markup. This allows the dealer to sell or "front" the drugs to their enterprise at prices that maximize profits. These profits can go to either purchasing additional drugs or go to profits for the dealer(s)/enterprise.

7.  The availability of the drugs will also dictate the purchase price. I am aware that the price of drugs in one area of the country may differ from the price of the same quantity of drugs in another area of the country. Most illicit drugs originate outside of the United States, specifically, areas closest to Latin America and Asia, such as South Florida, the Southwest Border of the United States, and California. Drugs that come into the United States in these areas are typically lower in price because of the high availability. The more available the drug is, the cheaper the prices; the less available the drug is, the more expensive it is. For example, in 2019 in Wichita, KS, when counterfeit prescription pills containing fentanyl were starting to come into Wichita, a local dealer was purchasing them from sources of supply for $15-$20 per pill. The dealer would sell them to consumers for $25-$35 per pill. In 2024, the organizational dealers were selling them to local dealers for $2-$3 per pill and then selling them to consumers for $8-$13 per pill.

8.  Additionally, another way the availability and profits can be maximized by an enterprise is manufacturing the drugs themselves. When the drugs are manufactured, such as making counterfeit prescription pills containing fentanyl, the sources of supply can maximize their profits because they are not having to purchase them from anyone. Other than paying for materials/chemicals to make the drugs, once the drugs are sold to dealers and consumers, the manufacturer will likely have larger profit margins.

9.  Lastly, the trust of the conspirators can influence prices and profits. The more a conspirator sells, the more trust the source of supply will have in that person. This means the conspirator can receive drugs from the source of supply at a cheaper rate than those who are not as trusted or effective at selling their drugs.

2

10. The quantities of drugs a dealer possesses can vary depending on proximity to and reliability of their source of supply or if they can manufacture controlled substances themselves. It is also possible for a dealer, especially those distributing pills, to diversify their inventory by obtaining controlled substances from a source as well as manufacturing a portion of their inventory. Higher level dealers of methamphetamine, heroin, and cocaine will deal in quantities of pounds to kilos and in the case of pills laced with fentanyl, hundreds or even thousands of pills. One way a dealer will help keep track of their business profits, money owed to them, and/or drugs provide a network, is the use of ledgers. Ledgers will typically have names or aliases with dollar amounts that are owed to the dealer. Utilizing the ledger helps the dealer keep track of sales and profits and allows their drug business to operate more efficiently.

**Different levels of Drug Dealing aka "Source of Supply":**

11. It is my experience there are different levels of drug dealing, aka "source of supply". A higher-level drug dealer is as an individual who organizes the movement of drugs from one region to another region. This individual is at the top or close to the top of an organization. This person is typically getting their product at the cheapest price. The higher-level drug dealer will typically be a source for the mid-level dealer. A mid-level is a more localized drug dealer. This individual organizes local drug distribution rings, providing drugs to local street level dealers. A street level drug dealer is an individual that sells drugs directly to the consumers. The lowest level dealer is an individual that sells smaller quantities of controlled substances. In my experience, it is common for dealers to engage in selling more than one type of drug, such as selling marijuana and prescriptions pills, to maximize their profits.

12. As it pertains to prescription pills in the District of Kansas, law enforcement has been experiencing an increase in the distribution of counterfeit pills containing fentanyl.  These drugs are mostly being manufactured in Mexico in large quantities and then transported to the United States. The pills are made by using compounds combined with fentanyl, along with colored powders to give the pills a more authentic appearance of a legal pharmaceutical grade pill and pressed into pill form using pill press machines.

**Individuals and Organization:**

13. I am aware that individuals within an enterprise are typically allowed certain access to other individuals involved in the enterprise.  This is typically due to the intentional compartmentalization that organizations employ to insulate high ranking members from law enforcement detection. Often prospective purchasers of drugs and/or associates who wish to purchase larger quantities of drugs must utilize another member with access to a source of supply to obtain a larger quantity of drugs.  Individuals involved in the enterprise often require that new or prospective customers be vetted by another member of the enterprise

3

prior to conducting a future transaction.  Criminal associates engaged in a drug conspiracy also may have differing access to prospective customers. For example, if one co-conspirator has drugs on hand to distribute, but has no prospective buyers, he/she may seek the assistance of the co-conspirator if that individual has access to prospective customers. There is a mutual benefit to both criminal associates which allows the enterprise to continue.

14. Based on my training and experience, higher-level drugs dealers, who are a part of enterprise, may utilize other trusted members of the enterprise to transport large quantity of drugs from one region to another region. At times, this person is referred to as a "mule". This can be done in various ways, such as utilizing vehicles. Sometimes these vehicles will have compartments to conceal the drugs.

15. Through my training and experience I am aware that drug traffickers, organization(s), and money launderers frequently attempt to hinder the investigative efforts of law enforcement. Specifically, drug traffickers and money launderers often utilize fictitious names or the names of others when obtaining telephone service, registering vehicles, and completing financial transactions.  Drug traffickers frequently change telephones/telephone numbers, use multiple phones, change transportation routes utilized by couriers, change vehicles and residences regularly, establish false businesses to act as a cover for their illegal activity, and use terminology and coded language regarding drug trafficking and money laundering activities that is intended to disguise the true nature of their communications.

16. I am aware that individuals and criminal enterprises typically utilize terminology and coded language that is specific to their organization. This includes slang terms for the drugs they are selling, such as "perc 30s", "blues", "M30s", "buttons" for counterfeit prescription pills containing fentanyl, "soft" for cocaine, and "gas" or "tree" for marijuana. I have also learned that traffickers do not always utilize the same terminology and coded language with all of the members of their enterprise.  In deciphering coded language, I utilize my training and experience in conjunction with the context of the communication, and the context of the investigation.  I have also learned through my training and experience that frequently there is a series of communications by, including but not limited to, cellular telephones, social media platforms, third party apps, between traffickers when speaking about a drug transaction utilizing coded language. Enterprises will also utilize "burner phones" or "trap phones" to conduct business. Typically, these phones are used for criminal business and contain very little identifying information and limited to coded information discussing their criminal business. Typically, individuals do not use these phones for long periods of time and will drop them and get new phones regularly. This is done to further conceal their criminal activity from law enforcement. Enterprises will also utilize "stash houses" to hide their drugs and proceeds from law enforcement or rivals.

4

**Use and Possession of Firearms:**

17. Based on my training and experience in conducting drug investigations, making arrests of drug traffickers, executing search warrants of drug traffickers' dwellings and conveyances, and conducting interviews of drug traffickers, I am aware that drug traffickers often possess weapons, typically firearms, on their person or in close proximity as a means to protect themselves and their illicit trade.  Drug traffickers typically refer to their distribution of illicit narcotics as a business. This criminal enterprise relies on a product (controlled substances) which is in high demand and has a large profit margin. The drug trafficker often is utilizing U.S. currency to purchase illicit narcotics in order to then distribute the controlled substances to make a profit. During the operation of the drug activity members of the drug trafficking enterprise are under threat of arrest by law enforcement. In addition, unlike legitimate businesses, drug traffickers cannot purchase insurance or report "losses" of product to law enforcement. Therefore, drug traffickers often utilize firearms to protect themselves and their business from theft, robbery, and loss of drug inventory and profits. Due to the value of the drugs, drug traffickers often fear robbery or theft and they utilize firearms as a means to protect their drugs in order to continue operating their illicit business. In some cases, traffickers are provided drugs to sell from a source of supply without having paid for the drugs in advance, a process referred to as "fronting". Drug traffickers who owe money to a source of supply are reliant on distributing those drugs in order to not only make a profit, but to pay back the source from which they received the drugs. Failure to do so can place themselves not only in jeopardy of not being provided drugs to distribute in the future, but physical harm from the source of the drugs. Many drug traffickers, and others engaged in criminal activity, have criminal histories which preclude them from legally owning or possessing a firearm. Consequently, it is not unusual for them to purchase firearms illicitly through other criminal associates and organizations to remain undetected by law enforcement. These firearms are typically acquired through other criminal activities such as robbery, residential and commercial burglary, theft, and through the use of legitimate purchasers who, in turn, sell the firearm to an individual who is not allowed to lawfully own or possess the firearm.

**Review of Case:**

18. My knowledge and opinion for this matter is based on, including but not limited to, my training and experience, my overall knowledge and involvement in this investigation, communicating with other investigators involved in this investigation, interviews conducted during the investigation, and knowledge from working similar investigations.

**Hassan SMITH – May 7, 2024 (Car Stop) Wichita, KS:**

19. I learned Hassan SMITH was contacted on May 7, 2024, during a traffic stop conducted by the Wichita Police Department (WPD) after leaving 10707 West Graber, Wichita, Kansas. During the traffic stop, WPD officers located approximately 771 grams (771 / .10grams is

5

approximately 7,700 "M / 30" pills) of counterfeit prescription pills containing fentanyl. I learned fingerprints belonging to Hassan SMITH and a Lisandro RUIZ were identified on the packaging of the fentanyl pills. Based on 2024 drug prices in the Midwest, including Kansas, the 7,700 pills have a street value of approximately $8/pill ($8 * 7,700), for an approximate total value of *$61,000*.

20. Additionally, I learned that Raashad "Shoddy" ROBINSON engaged in several cellular telephone communications with Emmanuel RECINOS (RUIZ associate) and Lisandro RUIZ from May 6 through May 7th. Both Emmanuel RECINOS and Lisandro RUIZ have Arizona area code phone numbers. This includes a call from Emmanuel RECINOS that occurred at 5:25 AM to Raashad "Shoddy" ROBINSON and was prior to Hassan SMITH's traffic stop. Reviewing Eddie "Trey" ROBINSON's cellular telephone activity around this time, investigators observed a text sent from Eddie "Trey" ROBINSON at 5:39 AM to Raashad "Shoddy" ROBINSON saying, "They outside boy", indicating the source of supply was "outside".  Additionally, a short time later, investigators observed a text from Eddie "Trey" ROBINSON to Martel COSTELLO indicating new product was available. Investigators learned through this investigation and from an interview with Raashad "Shoddy" ROBINSON the source(s) for these drugs were from Arizona. Further support of this being the source of supply, is Lisandro RUIZ's, who resides in Arizona, fingerprints were located on the seized drugs seized from Hassan SMITH later this day.

21. During surveillance conducted on May 7, 2024 at 10707 West Graber, multiple people were observed arriving at the residence, remaining for five minutes or less and then leaving. Several individuals were observed carrying items out of the residence and/or carrying bags when they entered. Among those observed arriving at the residence were Jevante OLIVER, Martel COSTELLO, Eddie "Trey" ROBINSON and Izaiah ROBINSON. As surveillance continued, WPD officers followed Eddie "Trey" ROBINSON away from this residence. While following him, investigators observed him stop at multiple residences, where he was observed entering with a backpack and then leaving.

22. Moreover, similarly marked pills were purchased from Jevante OLIVER on July 26, 2024. Similar marked pills were later seized during traffic stops involving James WILKINSON, Eddie "Trey" ROBINSON, Rashaad "Shoddy" ROBINSON, and Martel COSTELLO. Investigators also intercepted similar marked pills that were being shipped to 520 North Mathewson. In my opinion, based on the higher quantity of pills, the actions observed during surveillance, cellular telephone communications, latent print results, and association to the drug distribution organization, the drugs seized on May 7, 2024, were intended for distribution as a part of the drug conspiracy. The pills seized on May 7, 2024, are presented in Figure 1.



(Figure 1 – pills seized during the SMITH traffic stop)

### James WILKINSON and Eddie "Trey" ROBINSON – June 6, 2024 (Car Stops) Wichita, KS:

23. I learned James WILKINSON was contacted on June 6, 2024, during a traffic stop conducted by the WPD. During the traffic stop, WPD officers located approximately 2,209 grams or 2.2 kilograms (2,209 / .10grams is approximately 22,000 "M / 30" pills) of counterfeit pills containing fentanyl. Based on 2024 drug prices in the Midwest, including Kansas, approximately 22,000 pills would have a street value of approximately $8/pill ($8 * 22,000), for an approximate total of *$176,000.*

24. I learned James WILKINSON was observed during surveillance conducted on June 6 leaving 10707 West Graber, Wichita, KS. During this surveillance, law enforcement observed conspirator Eddie "Trey" ROBINSON at the residence, who was arrested the same day with counterfeit pills containing fentanyl. During the contact with WILKINSON, he advised he received the package containing the pills from "Trey" (later identified as Eddie ROBINSON) 10707 West Graber and was paid to take them to St. Joseph, Missouri.

25. Additionally, Eddie "Trey" ROBINSON was contacted on June 6, 2024, during a traffic stop conducted by the WPD. During the traffic stop, WPD located approximately 6,629 grams or 6.6 kilograms (6,629 / .10grams is approximately 66,290 "M / 30" pills) of counterfeit pills containing fentanyl in a Foot Locker bag . Based on 2024 drug prices in the Midwest, including Kansas, approximately 66,290 pills would have a street value of approximately $8/pill ($8 * 66,290), for an approximate total of *$530,320.*

26. I learned on this day, Eddie "Trey" ROBINSON was observed during surveillance leaving the residence 10707 West Graber, Wichita, KS carrying a Foot Locker bag.  During this surveillance, law enforcement observed conspirator James WILKINSON at the residence, who was arrested the same day with counterfeit pills containing fentanyl.

27. Like the events surrounding the drug seizure on May 7, 2024, I learned that Raashad "Shoddy" ROBINSON engaged in several cellular telephone communications with Emmanuel RECINOS on June 4th and 5th, leading up to this seizure. Additionally, during an interview conducted with Raashad "Shoddy" ROBINSON following his arrest (discussed later in this report), he stated that a BMW transported fentanyl pills from Arizona to Kansas on June 6, 2024. He also stated that law enforcement stopped this vehicle in Oklahoma as it was traveling back to Arizona. Investigators learned that on June 6, 2024, Emmanuel RECINOS was a passenger in a BMW that was stopped traveling back to Arizona, similar to what Raashad "Shoddy" ROBINSON told investigators.

28. The seized pills from James WILKINSON and Eddie "Trey" ROBINSON had similar markings as other pills in these investigations, to include but not limited to, pills purchased from Jevante OLIVER on July 26, 2024. Similarly marked pills seized during traffic stops involving Hassan SMITH, Rashaad "Shoddy" ROBINSON, and Martel COSTELLO. Investigators also intercepted identical pills that were being shipped to 520 North Mathewson, Wichita, KS. In my opinion, based on the higher quantity of pills, statements made by James WILKINSON and Raashad "Shoddy" ROBINSON, review of telephone records, observations made during surveillance and association to the drug distribution organization, the drugs seized on June 6, 2024, were intended for distribution as a part of the drug conspiracy. The pills seized on June 6, 2024, are presented in Figure 2 and 3.



(Figure 2 – Pills seized during the WILKINSON car stop)



(Figure 3 – Pills seized from the Eddie "Trey" ROBINSON car stop)

**Martel COSTELLO – July 11, 2024 (Car Stop) Wichita, KS:**

29. I learned Martel COSTELLO was contacted on July11, 2024, during a traffic stop conducted by the WPD. During the traffic stop, WPD officers located approximately 21 grams (21 / .10grams is approximately 210 "M / 30" pills) of counterfeit pills containing fentanyl. Based on 2024 drug prices in the Midwest, including Kansas, approximately 210 pills would have a street value of approximately $8/pill ($8 * 210) for an approximate total of *1,680.*

30. I learned that prior to the car stop, COSTELLO was observed during surveillance meeting up with a vehicle commonly driven by Jevante OLIVER. The seized pills from COSTELLO had similar markings as other pills in these investigations, to include but not limited to, pills purchased from Jevante OLIVER on July 26, 2024. Additionally, quantities of similarly marked pills were seized during traffic stops involving Hassan SMITH, Eddie "Trey" ROBINSON, Rashaad "Shoddy" ROBINSON, and James WILKINSON. Investigators also intercepted similar marked pills that were being shipped to 520 North Mathewson. In my opinion, based on the quantity pills, information located on COSTELLOs cellular telephone, and association to the drug distribution organization, the drugs seized on July 11, 2024, were intended for distribution. The pills seized on July 11, 2024, are presented in Figure 4.



(Figure 4 – pills seized during COSTELLO traffic stop)

**Jevante "YS / Young Special" OLIVER – July 26, 2024 (UC Deal) Wichita, KS:**

31. I learned Jevante "YS / Young Special" OLIVER participated in an undercover operation on July 26, 2024. During this operation OLIVER sold approximately 1,000 pills to an undercover law enforcement officer for $2,500. Laboratory analysis showed the pills weighed approximately 109 grams.

32. The pills purchased had similar markings as other pills seized or purchased in this investigation. Including but not limited to, pills seized during traffic stops involving Hassan

10

SMITH, Martel COSTELLO, Rashaad "Shoddy" ROBINSON, Eddie "Trey" ROBINSON and James WILKINSON. Investigators also intercepted similar marked pills that were being shipped to 520 North Mathewson. In my opinion, based on the quantity pills, pills being purchased from OLIVER, and association to the drug distribution organization, the drugs seized on July 26, 2024, were intended for distribution. The pills seized on July 26, 2024, are presented in Figure 5.



(Figure 5 – Pills purchased from OLIVER)

### Raashad "Shoddy" ROBINSON – September 4, 2024 (Car Stop):

33. Investigators learned a vehicle associated with Raashad "Shoddy" ROBINSON had traveled west, away from Wichita, Kansas on September 2, 2024. On September 4, 2024, investigators learned this same vehicle was now driving east away from Arizona. This vehicle was eventually stopped in Strafford, Texas driven by Raashad "Shoddy" ROBINSON. During the traffic stop, investigators located three (3) bundles of approximately 2,966 grams or 2.9 kilograms of powder fentanyl. Several bags of approximately 3,441 grams or 3.4 kilograms (3,441 / .10grams is approximately 34,400 "M / 30" pills) of counterfeit pills containing heroin were also located. These heroin pills looked and weighed like the typical *"counterfeit fentanyl pills containing fentanyl"*. Based on 2024 drug prices in the Midwest, including Kansas, fentanyl powder (similar to heroin prices) 2,966 grams at approximately $165/grams ($165 * 2,966) for an approximate total of *$489, 390.* The heroin pills would be sold as "blues" or "percs" and would be priced as counterfeit fentanyl pills. Knowing this, the value street value of 34,400 pills at $8/pill ($8 * 34,400), for an approximate total of *$275,520.* Along with the drugs two (2) firearms were located under the floor mat of the front passenger side floorboard, this is detailed later in this report.

11

34. I learned on this day that Raashad "Shoddy" ROBINSON told investigators he purchased these drugs from Arizona and planned on selling the drugs in Wichita, Kansas. Investigators learned this wasn't his first trip to Arizona. During his previous trips to Arizona, he would usually purchase upwards of 100,000 pills. He stated that pills seized on June 6, 2024, from Eddie "Trey" ROBINSON and James WILKINSON, belonged to him.

35. The seized pills from Raashad "Shoddy" ROBINSON had similar markings as other pills in these investigations, to include but not limited to, pills purchased from Jevante OLIVER on July 26, 2024. As previously noted, these pills had similar markings as the pills seized during traffic stops involving Hassan SMITH, Eddie "Trey" ROBINSON, James WILKINSON, and Martel COSTELLO. Investigators also intercepted similarly marked pills that were being shipped to 520 North Mathewson. In my opinion, based on the higher quantity pills, statements made by Raashad "Shoddy" ROBINSON, and association to the drug distribution organization, the drugs seized on September 4, 2024, were intended for distribution in/and around the Wichita, Kansas area. The drugs seized on September 4, 2024, are presented in Figure 6.

 

(Figure 6 – A: Bundles of fentanyl powder, B: pills marked with "M/30" )

36. As previously stated, there were two (2) firearms located on the passenger side floorboard of Raashad "Shoddy" ROBINSON's vehicle. One was a Glock, model 23 and one was a Ruger, Model LC9. During interviews, investigators learned from Raashad "Shoddy" ROBINSON that the Glock was his, while the Ruger belonged to his passenger, Semaj Alvarez. Additionally, he stated that he had the firearm for protection. Not only during drug transactions, but to protect himself from gang violence. It is my opinion, based on drugs being sold by Raashad "Shoddy" ROBINSON, accessibility of the firearms in the vehicle, the firearms being loaded, the proximity of the firearms to the drugs, and ROBINSON's

statements about protecting himself, that the firearms seized were possessed in furtherance of his drug trafficking.

**Search Warrant at 930 South Armour St, Wichita, KS on December 19, 2024:**

37. I learned there was a search warrant executed at 930 South Armour, Wichita, KS on October 19, 2024. Prior to the search warrant's execution, SA Canfield advised several members of this investigation at this residence. Such as Raashad "Shoddy" ROBSINSON, Martel COSTELLO, Jevante OLIVER, and James WILKINSON.

38. Additionally, evidence was retrieved from the trash of this residence that included discarded tops of sandwich baggies. In my opinion, this is indicative of packaging left over from packaging drugs for distribution. Photographs of these are presented in Figure 7.



(Figure 7 – A: Pieces from bag #8, B: Pieces from bag #4, C: Pieces from bag #7)

39. During the execution of the search warrant, I learned investigators located several items related to drug use and/or drug sales. Of note, a large bag of approximately 401 grams of marijuana was located in clothes in the closet of bedroom "F". Additionally, in the kitchen, investigators located digital scales, packaging materials, and items that could be used to mix drugs. These items include sandwich baggies, vacuum sealer bags, and a vacuum sealer. Also in the kitchen, on top of the refrigerator, there was a loaded, stolen firearm (S&W, Model SD9VE, 9mm caliber, Handgun, S/N: FCA1244). There were other firearm boxes, ammunition (such as .45 caliber and .223), and magazines made for other firearms, other than the one seized. These items are presented in Figure 8 and 9.  Investigators reviewed Eddie "Trey" ROBINSON's cellular telephone and observed several conversations related to drug dealing.



(Figure 8 – A: Marijuana in closet, B: Marijuana from closet, C: Items from kitchen)



(Figure 9 – A: Location of firearm on refrigerator, B: Firearm on refrigerator, C: Close up of firearm)

40. In my opinion, based on the quantity of marijuana, the concealment of the drugs in the closet, US Currency observed, the presence of a firearm, presence of scales, and packaging materials the marijuana was intended for distribution. Additionally, it is my opinion, based on the drug sales taking place, the proximity of the firearm to the drugs, the firearm being loaded, and the firearm being stolen, the firearm seized from 930 South Armour was possessed to further drug trafficking.

**Intercepted Package to 520 North Mathewson, Wichita, KS in/around March 20, 2024:**

41. I learned of a package located and intercepted by United States Postal Inspectors in Wichita, Kansas in/around March 20, 2024. Investigators eventually seized seven (7) vitamin bottles from inside of the intercepted package. These vitamin bottles contained blue pills marked "M/30". The approximate weight of these counterfeit prescription pills was 1,277 grams of fentanyl and 1,639 grams of fentanyl analogue. The approximate number of pills for 1,227 grams or 1.2 kilograms (1,227 / .10grams) would be 12,270 . The approximate number of pills for the 1,639 grams or 1.6 kilograms of analogue (1,639 / .10grams) would be 16,390. A combined total of pills would be 28,660. I learned fingerprints belonging to Lisandro RUIZ were identified on multiple vitamin bottles containing blue pills.  Based on 2024 drug prices in the Midwest, including Kansas, the 28,660 pills have a street value of approximately $8/pill ($8 * 28,660), for an approximate total of *$229,280.*

42. These seized pills have similar markings as other pills in this investigation, to include but not limited to, pills purchased from Jevante OLIVER on July 26, 2024. As well as these pills the traffic stops involving Raashad "Shoddy" ROBINSON, Hassan SMITH, Eddie "Trey" ROBINSON, James WILKINSON, and Martel COSTELLO. In my opinion, based on the mass quantity of pills and the association to the drug distribution organization, the drugs seized from the intercepted package were intended for distribution.

## CURRICULUM VITAE



### *Aaron Chaffee*
*Special Agent*

Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)
Kansas City Field Division
Wichita Field Office
301 North Main, Suite 225
Wichita, Kansas 67202
Office: (316) 269-6229
Email: aaron.chaffee@atf.gov

### EDUCATION:

| | |
|---|---|
| 2023 | **Graduate Certificate,** Forensic Arson Explosives Firearms & Tool Marks Investigations, Oklahoma State University |
| 2003 | **Bachelor of Liberal Arts and Science,** Criminal Justice Wichita State University, Wichita, Kansas |

### PROFESSIONAL EXPERIENCE:

**01/2015 to Present:** *Special Agent*

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)
Kansas City Field Division/Wichita Field Office
Wichita, Kansas

**Duties:**
-Conduct investigations of violations of Federal firearms laws, arson, explosives, controlled substance with an emphasis on relations of the aforementioned to violent crime.
-Works with United States Attorney's Office and state prosecutors during investigations.
-Lead case agent on several drug/firearms investigations which utilized confidential informants (CI's) and/or undercover (UC's) law enforcement personnel. These included investigations into individuals and/or organized groups of individuals distributing drugs in Kansas as well as investigations into individuals and/or groups trafficking drugs and firearms throughout the country. In support of these investigations, I have conducted numerous interviews/debriefs with cooperating defendants, gang members, suspects, witnesses, CI's and UC's into how the drug and firearm businesses operates.
-Lead case agent on complex, larger scale investigations, into trafficking drugs locally and throughout the country, firearm trafficking, gang activity and its relation to violent crime.
-Assisted Wichita Police Department (WPD) Narcotics officers, WPD Gang Unit, DEA, Sedgwick County Sheriff's Narcotics deputies, FBI, and surrounding agencies with investigations into the distribution of controlled substances and associated violent crime.
-Interviewed numerous witnesses, cooperating individuals, and arrestees in relation to controlled substances, violent crime investigations, and gang membership.
-Developed and managed confidential informants in relation to controlled substance, violent crime investigations, and gang activity.
-Utilized various types of investigative equipment, including but not limited to, recorders, transmitters, cameras, and tracking devices to assist in the aforementioned investigations.
-Utilized various law enforcement databases to collect, disseminate, and receive investigative information in relation to controlled substance and violent crime investigations.

-Reviewed hundreds of thousands of electronic communications and social media conversations of individuals regarding use and/or distribution of controlled substances and its relation to violent crime.
-Authored affidavits in support of drug/firearm seizures, residential search warrants, cellular telephones search warrants, social media search warrants, and financial search warrants.
-Prepared operational plans for use during arrest, search warrants, and undercover operations in relation to controlled substances and violent crime investigations.
-Executed arrest warrants and search warrants.
-Arrested individuals for violating Federal laws.
-Collected, secured, and disposed of evidence and seized property in relation to controlled substances and violent crime investigations.
-Testified in grand jury and court proceedings regarding drugs, firearms, violent crimes, gangs and the how electronic communications, including social media, aide these investigations.
-Authored expert opinions in preparation of testimony in federal court. Topis include firearm possess/used during drug trafficking, the business of drug trafficking, and regional knowledge of drugs and violent crime.
-Acted as the Group Supervisor or Resident Agent in Charge in the absence of the GS/RAC at various times.
-Provides training to law enforcement on federal firearms, controlled substances, violent/gang investigations, and social media investigations.


**07/2005 – 01/2015,** *Patrol Officer, SCAT Officer, Gang Intelligence Officer*
                    Wichita Police Department
                    Wichita, Kansas

**Duties:**
*Assigned to a Gang and Violent Crime Task Force as a Gang Intel Officer with the Wichita Police Department and the FBI (10/2013 to 7/2014)*. The purpose of the task force is to do large scale investigations and try to develop federal or state charges against gang leadership, gang organizations, or target the most violent gang members.

*Assigned to the Gang Unit as a Gang Intelligence Officer (12/2011 to 1/2015)*
-As a Gang Intelligence Officer, was required to maintain a database of documented gang members by collecting and documenting information that is received through, confidential informants, gang enforcement, surveillance, field interviews, criminal interviews as well several other investigative tools. Monitor individual gang member activity to identify if they meet the Kansas State Statute Gang Criteria, K.S.A. 21-6313.
-Provided hundreds of hours of gang training to local, state, federal law enforcement as well as community groups.
-Assist in major homicide investigations, all gang homicides, as well as all gang related investigations.
-Keep in constant contact with local, state and federal judicial agencies to monitor gang members who have committed crimes, been convicted of crimes, and have been sentenced for committing these crimes.
- Developed and managed confidential informants in relation to controlled substance, violent crime investigations, and gang activity.
-Reviewed hundreds of thousands of electronic communications and social media content relating to selling and using controlled substances, gang content and violent crime.
-Testified in Federal Grand Juries, District Court, and Municipal Court.

*Member of SCAT (Special Community Action Team) (6/2009 to 12/2011)*
-SCAT's primary focus is working street level drugs and violent crime investigations.
-Conduct investigations into hundreds of street level drug complaints, gang activity, and violent crime.
- Developed and managed confidential informants in relation to controlled substance, violent crime investigations, and gang activity.
-Typed, applied, and executed numerous drug search warrants. Assisted additional SCAT teams in hundreds of drug related search warrants investigations.
-Assisted, including but not limited to, WPD Narcotics, WPD Gang Unit, and DEA with investigations into controlled substances.


*Conduct preliminary criminal investigations as a patrol officer assigned to a sector. (7/2005 to 6/2009)*.

-Affect arrests of felons and misdemeanants for local, county, and state crimes.
-Interview/Interrogate thousands suspects, victims, and witnesses to crimes.
-Participate as a member of the Wichita Police Department Community Policing Initiative.
-Enforce city traffic ordinances.
-Conduct proper searches and seizures pursuant to probable cause that a crime has been committed.
-Collect and submit evidence after securing a crime scene.
-Completing paperwork related to police operations.

## CERTIFICATIONS:

2021 - present          ATF Certified Fire Investigator (CFI)

2023 – present          International Association of Arson Investigators (IAAI) CFI #07-062736

2023 – present          ATF Instructor (Gangs, Complex Investigations, Fire Science/Origin and Cause)

## PROFESSIONAL TRAINING RECEIVED:

### *Criminal Investigation and Gang Related Training Received*

| | |
|---|---|
| 2024 | Fire Death Investigations (8 Hours, OSFM/Overland Park FD) |
| 2024 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2022 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2021 | Kansas Gang Investigators Association Conference (8 Hours) |
| 2021 | Kansas Narcotics Officer Association Conference (24 Hours) |
| 2020 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2019 | Kansas Narcotics Officers Association Conference (24 Hours) |
| 2018 | Outlaw Motorcycle Gangs, Kansas Update (4 Hours). |
| 2018 | Kansas Gang Investigators Conference (24 Hours). |
| 2017 | Advanced Investigative Techniques, Complex Case Investigations, ATF (40 Hours). |
| 2017 | Kansas Gang Investigators Association Conference (24 Hours). |
| 2016 | Kansas Gang Investigators Association Conference (24 Hours). |
| 2015 | Special Agent Basic Training (SABT-ATF) graduate, Federal Law Enforcement Training Center (FLETC). |
| 2015 | Criminal Investigation Training Program (CITP-1811) graduate, Federal Law Enforcement Training Center (FLETC). |
| 2014 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2013 | Title III Training, US Attorney's Office, (16 Hours) |
| 2013 | Topeka Violent Crime, Gangs, and Drugs Conference (24 Hours) |
| 2013 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2012 | Kansas Gang Investigators Association Conference (24 Hours) |
| 2011 | Incident Response to Suicide Bombers Training (40 Hours) |
| 2011 | Kansas Gang Investigators Association Conference (24 Hours). |
| 2010 | Kansas Officer Down Training (8 Hours) |
| 2010 | White Supremacist in the Midwest (8 Hours) |
| 2010 | Interview and Interrogation (40 Hours) |
| 2010 | Midwest Law Enforcement Conference on Gangs and Drugs (24 Hours) |
| 2009 | Top Gun (Narcotics Investigations), Kansas Narcotics Officers Association (40 Hours) |
| 2009 | Midwest Law Enforcement Conference on Gangs and Drugs (40 Hours) |
| 2009 | Incident Response to Terrorist Bombs Training (40 Hours) |
| 2008 | Kansas Gang Investigators Conference (24 Hours) |
| 2005 | Sedgwick County Law Enforcement Training Academy (880 Hours) |
| 2005 to Present, | As a member of the WPD and ATF, I have conducted thousands of interviews of individuals (Witnesses, Suspects, CI's, Cooperating Defendants, Undercovers LEO, etc.) |

regarding drug and violent/gang related crimes and items used to facilitate these crimes, such as firearms, social media, and cellular telephones.

## INSTRUCTOR EXPERIENCE:

The following instructor assignments are highlights and not all-inclusive.  I have conducted training classes pertaining to gangs, drugs, and firearms issues, for federal, state, local police, fire personnel, private businesses, colleges and universities, school districts and other public entities.

2025    Provided Training at the Kansas Chapter International Association of Arson Investigators (IAAI) annual conference. Topics include a residential house fire scene examination, Hot Shot Bug Bomb flame characteristics research, and aerosol cans flame characteristics research.   125 attendants (2 hours)

2024    Provided Training at the WPD/SCSO Law Enforcement Training Facility. Training included federal firearm laws, investigative techniques, and gang trends.  40 attendants (2 Hours)

2024    Provided Training at Alabama Fire Marshals Conference. Topics included complex case study of an investigation that focused on various investigative techniques, criminal resources, fire resources, used to take down a violent regional criminal organization. This organization was involved in Arson, Murders, Shootings, Drug Distribution Conspiracy, and Money Laundering Conspiracy. 60 attendants (2 hours)

2023    Provided Training at the Kansas County & District Attorney's Association conference. Training included National Integrated Ballistic Information Network (NIBIN) and using NIBIN for gang and complex investigations. 175 attendants (1.5 Hours)

2022    Provided Training at the KGIA Annual Conference. Training included federal firearm laws, What is National Integrated Ballistic Information Network (NIBIN) and using NIBIN for gang investigations. 180 attendants (4 Hours)

2022    Provided Training at the Sedgwick County Sheriff Recruits. Training included federal firearm laws, investigative techniques, and gang trends.  18 attendants (2 Hours)

2021    Provided Training at Kansas Law Enforcement Training Center, Kansas State Fire Marshal, CFI 80 Law Enforcement Course, Crime Scene Investigations. 40 attendants (4 hours)

2021    Provided Training at the WPD. Training included federal firearm laws, investigative techniques, and gang trends.  30 attendants (2 Hours)

2021    Provided Training at the WPD. Training included federal firearm laws, investigative techniques, and gang trends.  20 attendants (2 Hours)

2020    Provided Training at the WPD. Training included federal firearm laws, investigative techniques, and gang trends.  50 attendants (2 Hours)

2020    Provided Training at the KGIA Annual Conference. Training included federal firearm laws, social media techniques/investigations, and gang trends. 130 attendants (6 Hours)

2019    Provided Training at the WPD and SCSO recruits. Training included federal firearm laws, investigative techniques, and gang trends.  30 attendants (2 Hours)

2019    Provided Training at the WPD and SCSO recruits. Training included federal firearm laws, investigative techniques, and gang trends.  30 attendants (2 Hours)

2018    Provided Training at the WPD and SCSO recruits. Training included federal firearm laws, investigative techniques, and gang trends.  30 attendants (2 Hours)

2018    Provided Training at the WPD and SCSO recruits. Training included federal firearm laws, investigative techniques, and gang trends.  30 attendants (2 Hours)

2017    Provided Training at the WSU/KGIA Gang Investigation and Update Training. Training included federal firearm laws, investigative techniques, and gang trends.  100 attendants (3 Hours)

2014    Provided Training to Sedgwick County Corrections Residential employees. Training included gang identification, statistics, and current trends. 20 attendants (3 Hours)

2014    Provided Training to Sedgwick County Juvenile Detention Facility. Training included gang identification, statistics, and current trends. 35 attendants (3 Hours)

2013    Provided training to Sedgwick County JFS/Community Corrections about gang history, local gang statistics, recent trends, and gang identification (3 Hours)

2013    Provided a presentation about "organization of gangs" to a Criminal Justice course at Newman University (3 Hours)

2013    Provided Training to the staff at Club Rodeo. Training included statistics, musical influences on

gangs, and gang identification. 15 attendants. (3 Hours)

2013    Provided Training for Kansas Highway Patrol Recruits. Training included gang statistics, identification, and current trends. 15 attendants. (3 Horus)

2013    Provided Training for Sedgwick County Community Corrections. Training included gang statistics, identification, and current trends. 8 attendants. (3 Hours)

2013    Provided Training for Wichita Police Department Recruits. Training included, statistics, identification, current trends, Gang Statute, and WPD procedures on dealing with gang crime. 37 attendants. (4 Hours)

2013    Provided Training for Wichita State University Criminal Justice class. Training included gang statistics and the causation of gang or gang related crime. 25 attendants. (4 Hours)

2013    Provided a gang training session for law enforcement through the Regional Community Policing Institute with WSU. 45 attendants. (8 Hours)

2013    Training for Kansas Department of Corrections Parole Officers. Training included gang statistics, identification, and current trends. 50 attendants. (3 Hours)

2013    Sedgwick County Juvenile Field Services. Training included gang statistics, identification, and current t rends. 20 attendants. (3 Hours)

2013    Provided gang training session for law enforcement through the Regional Community Policing Institute with WSU. 45 attendants. (8 Hours)

2013    Training for Marshall Middle School. Training included gang statistics, identification, and current trends. 40 attendants. (3 Hours)

2013    Training for Sedgwick County Community Corrections. Training included current gang trends and identification. 10 attendants. (3 Hours)

2013    Training for Community in Schools. Training included gang statistics, current trends, and identification. 25 attendants. (3 Hours)

2013    Training for Sedgwick County Day Reporting Center. Training included gang history, local history, statistics, and identification. 10 attendants. (3 Hours)

2012    Training for City of Wichita Adult Probation. Training included local gang history, statistics, and identification. 30 attendants. (3 Hours)

2012    Training for Preferred Family Health Care-Substance Abuse. Training included gang statistics and identification. 20 attendants. (2 Hours)

2012    Training for Kansas Highway Patrol Troopers recruit class. Training included gang local history, statistics, and identification. 20 attendants. (3 Hours)

2012    Training for Gang Awareness and Prevention Efforts in Wichita. Training included gang local history, statistics, and identification. 200 attendants. (3 Hours)

2012    Training for Sedgwick County Juvenile Field Services. Training included identification, gangs/media, and Juggalos. 60 attendants. (3 Hours)

2012    Training for South High Teachers and Administration at South High. Training included current gang trends and identification. 150 attendants. (2 Hours)

2012    Training for USD 259 Security at USD 259 Facility. Training included current gang trends and identification. 8 attendants. (2 Hours)

2012    Training for Mid-American Regional Crime Analysis Network in Overland Park, KC. Training included national and local gang trends. 50 attendants (4 Hours)

2012    Training for LEO personnel at WSU Metroplex. Training included current gang trends and history, Gangs and Media, and Juggalos. 80 attendants (20 Hours)

2012    Presentation to McConnell Air Force OSI and Security Force. 15 attendants, about local gang Trends (2 Hours)

2012    Presentation to Butler County Community College Criminal Justice class, approx. 15 students, about local gang trends. (4 Hours)

## Expert Testimony

2025    Marshall Green Jr. Trial (United States District Court, District of Kansas, 6:23-cr-10041-EFM-1-10, US Vs. Calvin Williams Jr, et al.), provided testimony on manner in which controlled substances are distributed in Kansas, types of controlled substances distributed, manner is which

controlled substances are distributed, prices of controlled substances in Midwest, tools and equipment used in the manufacture and distribution of controlled substances, terminology and coded language used in connection with the drug trade. As well as testimony regarding drug organizations and knowledge of drug conspiracies.

2022    ViCAR Trial (United States District Court, Southern District of Iowa, 4:21-CR-075, US Vs. Raekwon Malik Patton, et al.), provided testimony on national and neighborhood gangs culture, current trends, and differences between the two. How social media has influenced gangs, how social media is used to conduct gang business, and how social media is used to conduct drug business. How firearms are used with gangs and how firearms used are by drug dealers.

2022    RICO Trial (18th Judicial District, Sedgwick County Kansas, Court, 19CR1872, State of Kansas Vs, Erik DIXON, et al.), provided testimony on national and local gangs culture (Respect, Revenge and Reputation) and differences between the two. How social media has influenced gangs, how social media/cellular telephones are used to conduct gang business, used to aide in communication about committing violent acts, and how social media is used to conduct drug business. How firearms are used with gangs and how firearms used are by drug dealers.

## SPECIAL PROJECTS AND ASSIGNMENTS

| | |
|---|---|
| WPD and FBI Gang & Violent Crime Task Force | Wichita, KS (2013-2014) |
| ESF-13, Hurricane Harvey | Houston, Texas (2017) |
| Crime Gun Intelligence Center (CGIC) | Wichita, KS (2019 to present) |
| ATF Violent Crime Coordinator | District of Kansas (2020 to 2022) |

## PROFESSIONAL ORGANIZATIONS

Midwest Criminal Justice Institute, Gang Consultant, 2012-2015.
Kansas Regional Community Policing Institute, Gang Consultant, 2012-2015.
Kansas Gang Investigators Association member (KGIA), 2008-Present.
Kansas Gang Investigators Association (KGIA), board member, 2017-2025.
Kansas Narcotics Officers Association (KNOA), 2019-Present.
Federal Law Enforcement Officers Association, 2015-2020.

## Accommodations and Awards

Received 11 Commendatory Performance Reports, Wichita Police Department, 2005-2015.

Officer of The Month, Wichita Police Department, January 2009.

Wichita Police Department Nominated Officer of The Year, 2009.

Wichita Police Department Bronze Wreath of Merit, September 2009 *(For organizing soccer games and free soccer camps for area at-risk youth)*

Officer of The Month, Wichita Police Department, March 2010.

Named to Wichita Business Journal's "Top 40 Business Professionals Under the Age of 40" in Wichita, KS. May 2010.

Wichita Police Department Nominated Officer of The Year, 2010.

Wichita Police Department Certificate of Commendation Award, June 2012 *(For investigation/prosecution of gang related drive-by)*

Wichita Police Department Certificate of Commendation Award, August 2012 *(For locating wanted gang member who was suspect in drug robbery, double murder investigation).*

Wichita Police Department, Silver Wreath of Valor, the Wichita Police Departments second highest award, August 2012 *(For lawful actions taken while witnessing an active shooter situation).*

Wichita Police Department Certification of Commendation Award, August 2013 *(For locating wanted gang member who was suspect in gang related murder investigation).*

(ATF) Ariel Rios Leadership Award, recipient, Special Agent Basic Training, July 2015.

Wichita Police Department Bronze Wreath of Merit, July 2019 *(Received for historical and proactive RICO investigation/prosecution of local Crip gang in partnership with the WPD).*

Awarded an ATF individual performance award related to complex case work performed during the 2019 fiscal year.

Wichita Police Department Bronze Wreath of Merit, February 2020 *(Received for a large-scale proactive investigation/prosecution, in partnership with WPD, of local individuals involved violence that are using social media to sell drugs and guns).*

Awarded an ATF individual performance award related to overall work performance during the 2020 fiscal year.

Wichita Police Department Bronze Wreath of Merit, February 2021 *(Received for proactive investigation with WPD that resulted in the arrest, charging, and prosecution of individual tied to several NIBIN/CGIC shooting alerts).*

Awarded an ATF individual performance award related to overall work performance during the 2021 fiscal year.

Wichita Police Department Bronze Wreath of Merit, July 2022 *(Received after completing an investigation with the WPD and Wichita Fire Department into an individual who was responsible for numerous fires in the City of Wichita. SA Chaffee worked with these agencies, as well as the Sedgwick County District Attorney's Office, with the initial fire investigation and conducted follow-up on the other fire investigations, that resulted in the individual being charged with several felonies and numerous arsons).*

Awarded an ATF individual performance award related to overall work performance during the 2023 fiscal year.

Wichita Police Department Certificate of Accommodation, June 2024 *(Received for organizing a proactive investigation with the Wichita Police Department and Wichita Fire Department that developed evidence that solved a cold case murder).*

Awarded an ATF individual performance award related to overall work performance during the 2024 fiscal year.