**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cr-10016-EFM-04 |
| | ) | |
| MARTEL COSTELLO, | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE AND
BRIEF IN SUPPORT THEREOF**

COMES NOW the defendant, Martel Costello, by and through his counsel of record, Sylvia B. Penner of Penner Lowe Law Group, and moves this Court for an order suppressing and excluding from evidence all items and information obtained as a result of a search and seizure conducted by law enforcement on or about July 11, 2024, on the grounds that such evidence was obtained in violation of the Defendant's rights under the Fourth Amendment to the United States Constitution. In support thereof, the defendant states as follows:

**I. BACKGROUND AND STATEMENT OF FACTS**

The Government's Superseding Indictment, filed on August 5, 2025, charges Martel Costello ("Costello") with possession with the intent to distribute fentanyl analogue, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Doc. 96.   The pills in question were located during a pat down following a traffic stop.

On or about July 11, 2024, in Wichita, Kansas, Costello was traveling in a silver Chevrolet Malibu in the area of 9th Street and Estelle when Wichita Police Department ("WPD") Officer Brock Kampling reportedly observed the defendant fail to activate his turn signal at least

1

100 feet prior to turning left (eastbound) from Estelle onto 9th[1]. Officer Kampling did not specify how far away he was from Costello's Malibu when he observed the alleged violation. The officer's report contains no details of his direction of travel in relation to Costello, his vantage point, and what other vehicles, if any, might have interfered with his ability to plainly see the movement of Costello's vehicle. No other officer observed the violation.

Wichita Police Officer Aric St. Vrain, after receiving this information from Officer Kampling, got behind the Chevrolet Malibu. Officer St. Vrain's video shows Costello use his signal at least 100 feet prior to executing his turn from 9th St. onto Hillside. *See* USA-00001353. The video goes on to show the Malibu drive up and over the curb as it turns into the lane closest to the curb and continue southbound on Hillside. Officer St. Vrain then initiates a traffic stop. Costello was immediately responsive to the lights and sirens and safely stopped his vehicle.

During the traffic stop, Officer St. Vrain reportedly smelled an odor of marijuana while standing at the driver's door. Using the alleged odor of marijuana as probable cause, Officer St. Vrain and other officers searched Costello's vehicle. The search of the vehicle revealed there was only a small amount of marijuana "shake" on the center console and in the cup holder of the vehicle. *See* USA-00001283 and USA-00001286.

After Officer St. Vrain reported smelling marijuana but before he located the "shake", Officer Kampling decided to perform a pat down for weapons based upon Costello's previous and recent arrest involving possession of a firearm. He patted Costello's outer clothing, during which he reportedly felt a "hard bulge with the top of his hand that he believed to be contraband

---

1 A review of discovery revealed that Officer Kampling did not record the violation.  Two videos of law enforcement's interaction with Costello were provided as USA-00001352 and USA-00001353, and neither show a failure to signal within 100 feet of executing a turn.

of some sort based upon the initial feel." *See* USA-00001286. After concluding that the bulge was not a weapon, Officer Kampling continued with the pat down. He stated in his report that he formed the opinion that the bulge felt like hard pills, although it is unclear at what point during the pat down he formed that opinion. In the correlating video, he is seen performing an initial pat down, then handcuffing Costello, performing further pat down, then telling Officer St. Vrain that he felt "something", but did not identify the object as pills. *See* USA-00001364.    To rattle the object loose, Officer Kampling instructed Costello to move his arms and widen his stance. In the video, Officer Kampling is seen squeezing the shorts and then pulling the left leg of the shorts out and shaking them until the bag with pills falls to the ground.    *See Id*.

## II. AUTHORITIES

The Fourth Amendment to the United States Constitution broadly prohibits all unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a seizure for purposes of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

A law enforcement officer may conduct a traffic stop on a vehicle if the officer has an objectively reasonable basis to believe that a traffic or equipment violation has occurred or is occurring. *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Courts examine reasonable suspicion by considering the totality of the circumstances, allowing officers to make inferences from the information available to them based on their experience and training. *United States v. Mesa-Roche*, 288 F. Supp. 2d 1172, 1182-83 (2003). Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *United States v. Sokolow*, 490 U. S. 1, 7 (1989).

Kansas law requires motorists to activate their turn signals at least 100 feet prior to

turning left or right upon a roadway. K.S.A. § 8-1548(b). When a driver intends to turn right, the driver is required to approach and execute the right turn as closely as practicable to the right-hand curb or edge of the roadway. K.S.A. § 8-1545(1). The statute governing the required manner of turning a vehicle does not make striking the curb a traffic violation.

A warrantless search is *per se* unreasonable unless it falls within a well-established and clearly delineated exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those exceptions allows a police officer to search a vehicle without a warrant if the vehicle is readily mobile, which creates an exigency in the form of the likely disappearance of the vehicle, and the officer has probable cause to believe that the vehicle contains contraband. *California v. Acevedo*, 500 U.S. 565, 569 (1991), *citing Carroll v. United States*, 267 U.S. 132, 153 (1925)). The existence of exigent circumstances is to be determined at the time the automobile is seized. *Id.*, *citing Chambers v. Maroney*, 399 U.S. 42 (1970)).

The odor of marijuana alone may generally be sufficient to establish probable cause. *United States v. Morin*, 949 F.2d 297, 300 (1991). However, courts also look to other factors as well, such as the officer's training and experience in identifying the distinct odor of marijuana and the officer's proximity to the odor source. *State v. Dixon*, 181 P.3d 589 (2008); *State v. Hubbard*, 309 Kan. 22, 40 (2018).

The "plain feel" doctrine establishes that, during a lawful pat down search, a police officer may seize contraband detected through the sense of touch if its incriminating nature is "immediately apparent" without further manipulation. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The officer must have probable cause to believe that the object is contraband based solely on its contour or mass as felt during the pat down. *Dickerson* at 367. If the officer must manipulate the object to determine its nature, such actions constitute an independent search that

violates the Fourth Amendment. *See generally Dickerson*.

Under the exclusionary rule, as a matter of due process, evidence obtained by a search and seizure in violation of the Fourth Amendment is inadmissible in federal court, regardless of whether it was seized by federal or state agents. *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). Upon the hearing of a motion to suppress evidence based on a warrantless search and/or seizure, the defendant bears the burden of proving that his Fourth Amendment rights were implicated, after which the burden shifts to the government to prove to the trial court the lawfulness of the search and/or seizure. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994). If a court finds a traffic stop to have been made without an objectively reasonable basis to believe that a traffic violation occurred, the court is empowered to suppress any evidence discovered as a result of the unlawful traffic stop. *See, e.g., United States v. Valadez-Valadez*, 525 F.3d 987, 993 (2008).

### III. ARGUMENT

*A. Officers Kampling and St. Vrain did not have an objectively reasonable basis to believe that the defendant committed a traffic violation. As such, the traffic stop of the defendant's vehicle violated the defendant's Fourth Amendment right against unreasonable searches and seizures.*

Officer Kampling reportedly observed the defendant fail to signal at least 100 feet before turning from Estelle onto 9th, which, if true, would be a violation of K.S.A. § 8-1548(b). Officer Kampling further asserted that the defendant's vehicle was less than one car length away from the intersection when the defendant activated his turn signal. However, the traffic violation is not captured on video, and Officer Kampling did not specify how far away he was from the defendant's vehicle when he observed the alleged traffic violation or his direction of travel in relation to the defendant's vehicle, nor did he note any obstructions that blocked his view of the defendant's vehicle. No other officers observed the violation, and it is thus unable to be

corroborated. In short, Officer Kampling failed to allege facts sufficient to provide him with an objectively reasonable basis for stopping Costello's vehicle, whether based on probable cause or reasonable suspicion of criminal activity.

Officer St. Vrain observed the Malibu go up and over the curb at 9th and Hillside when it turned onto Hillside from 9th. However, K.S.A. § 8-1545(1) only requires that a driver make a right-hand turn as close as practicable to the right-hand curb or edge of the roadway and does not make striking the curb a traffic violation. Like Officer Kampling, Officer St. Vrain failed to allege sufficient facts to provide him with an objectively reasonable basis for stopping the defendant's vehicle.

Based on the totality of the circumstances, neither Officer Kampling nor Officer St. Vrain had an objectively reasonable basis to believe that the defendant committed a traffic violation, as required by *Ospina-Botero* and *Mesa-Roche*. First, Officer Kampling failed to specify facts that were necessary to support his assertion that the defendant did not initiate his turn signal 100 feet prior to turning. Second, Officer St. Vrain was unable to corroborate Officer Kampling's assertion that the defendant failed to signal appropriately, as neither he nor any other officer observed the alleged violation. Finally, Officer St. Vrain did not observe a traffic violation on his own, as striking the curb is not a traffic violation under Kansas law. As such, Officer St. Vrain's traffic stop of Costello's vehicle violated the defendant's Fourth Amendment right against unreasonable searches and seizures. Because the government cannot carry its burden of proving that the traffic stop was lawful, all evidence discovered because of the unlawful traffic stop must be suppressed under the exclusionary rule.

*B. Additionally and/or in the alternative, officers only found a small amount of marijuana residue in the vehicle's center console and cupholder, which could not have produced an odor noticeable by Officer St. Vrain.*

Officer St. Vrain noted an odor of marijuana as he stood by the driver's side door after initiating the initial traffic stop, and officers searched the defendant's vehicle on that basis. However, officers only found a small amount of marijuana residue, known as "shake," in the center console and the cup holder of the defendant's vehicle. The officers in *Dixon*, *Hubbard*, and *Morin*, all testified to the strength of the odor of marijuana in those cases, and subsequent searches of the defendants' property, including a nylon bag (*Morin*), an apartment (*Hubbard*), and a vehicle (*Dixon*) revealed marijuana in greater, sometimes much greater, quantities than was found in the defendant's vehicle in the instant case. In all three of these cases, the court found that the officers had probable cause to search. In this case, Officer St. Vrain never commented on the strength of the odor he smelled, making this case distinguishable from *Dixon*, *Hubbard*, and *Morin*.

Based on the small amount of marijuana that was ultimately found in the vehicle, as well as the fact that Officer St. Vrain was at least a few feet away from where the marijuana was found, Officer St. Vrain's claim that he could smell an odor is questionable at best. While Officer St. Vrain's video concededly shows that Costello's vehicle was readily mobile, thus satisfying the first prong of the automobile exception to the Fourth Amendment's warrant requirement, Officer St. Vrain failed to allege facts sufficient to give him probable cause that Costello's vehicle contained contraband. As such, officers were required to obtain a warrant to search Costello's car. In other words, the motor vehicle exception as articulated in *Carroll* does not apply to this case because the second prong of probable cause is not satisfied. Because the government cannot carry its burden of proving that the vehicle search was lawful, all evidence

7

discovered because of the unreasonable search of the defendant's vehicle must be suppressed under the exclusionary rule.

*C. Additionally and/or in the alternative, Officer Kampling manipulated the hard bulge in the defendant's pants after being unable to determine its nature based on the sense of touch during the pat down of the defendant. Such actions constituted an independent search that does not fall within another exception to the Fourth Amendment's warrant requirement.*

After ordering the defendant out of his vehicle, Officer Kampling patted down the defendant for weapons and felt a hard bulge, which he knew was not a weapon, during the pat down. After feeling the bulge, Officer Kampling shook the defendant's pants in an attempt to remove the bulge and determine its nature. Officer Kampling stated in his report that he considered the bulge to be contraband of some sort, but the point at which he formed that opinion is, at best, unclear.

Officer Kampling's shaking, squeezing, and pulling of the defendant's pants after feeling the hard bulge was functionally equivalent to manipulating the bulge with his fingers after feeling the bulge or physically reaching into the defendant's pants with his hand, like the arresting officer in *Dickerson* did. The United States Supreme Court held in *Dickerson* that evidence found after the officer manipulated it without discerning its nature, under similar circumstances to this case, is inadmissible under the exclusionary rule, as such a search is separate and independent from the initial pat down and thus requires a warrant. The Supreme Court found that the additional warrantless manipulation in *Dickerson* violated the defendant's Fourth Amendment right against unreasonable searches and seizures.

As noted *infra*, the facts of this case are strikingly similar to those in *Dickerson*. Officer Kampling began shaking, squeezing, and pulling the defendant's pants after completing an initial legal pat down search, feeling a hard bulge, and being unable to determine its nature based on his plain feel of the object, just like the arresting officer did in *Dickerson*. Moving the defendant's

8

pants manipulated the bulge, which constituted a separate search from the initial pat down and thus required a warrant.

The fact that Officer Kampling felt the need to shake the defendant's pants shows that Officer Kampling was initially unable to determine what the hard bulge in the defendant's pants was, nor was he immediately aware of its incriminating nature, based on his sense of touch. Officer Kampling was, for his part, able to determine at the outset that the bulge was not a weapon. Otherwise, Officer Kampling failed to allege sufficient facts to give him probable cause to continue to search the defendant after the initial pat down was complete. Officer Kampling's conduct in this case was roughly akin to that of the arresting officer in *Dickerson*.

Because the shaking of the defendant's pants was an independent search that required a warrant, and because no exception to the warrant requirement is applicable to that independent search, the warrantless shakedown, which resulted in a bag of pills falling out onto the ground, was a *per se* unreasonable search that violated the defendant's Fourth Amendment right against unreasonable searches and seizures. The government cannot carry its burden of proving that the shakedown search was lawful and reasonable. As such, any evidence discovered because of the unlawful shakedown search must be suppressed under the exclusionary rule.

## IV. CONCLUSION

WHEREFORE, the defendant respectfully moves this court to suppress all evidence obtained as a result of the unlawful traffic stop, search of the defendant's vehicle, and pat down and shakedown search.

Respectfully submitted,

/s/Sylvia B. Penner
SYLVIA B. PENNER
Sup. Ct. No. 21640
Penner Lowe Law Group, L.L.C.

9

245 N. Waco, Ste 125
Wichita, KS 67202
Telephone: (316) 847-8847
Fax: (316) 847-8853
E-mail: spenner@pennerlowe.com

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I electronically filed the foregoing MOTION TO SUPPRESS with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to each counsel of record in this case.

/s/Sylvia B. Penner
SYLVIA B. PENNER
Sup. Ct. No. 21640
Penner Lowe Law Group, L.L.C.
245 N. Waco, Ste 125
Wichita, KS 67202
Telephone: (316) 847-8847
Fax: (316) 847-8853
E-mail: spenner@pennerlowe.com