**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-10016-EFM-04 |
| | ) | |
| MARTEL COSTELLO, | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS

COMES NOW the defendant, Martel Costello, by and through his counsel of record, Sylvia B. Penner of Penner Lowe Law Group, and submits this Reply in further support of his Motion to Suppress Illegally Seized Evidence (Doc. 142). As set forth below, each of the challenged phases of the July 11, 2024 encounter – the traffic stop, the vehicle search, and the pat-down – was unconstitutional. Accordingly, the evidence obtained as a result should be suppressed.

### I. ARGUMENT

#### A. The Traffic Stop was not Supported by Reasonable Suspicion or Probable Cause of a Traffic Violation

The Government's attempt to justify the stop rests on two unsupported theories, neither of which establishes probable cause or reasonable suspicion sufficient to satisfy the Fourth Amendment. The Government's first theory is that Officer Kampling observed a violation of K.S.A. § 8-1548(b) when Mr. Costello purportedly failed to activate his turn signal at least 100 feet prior to executing his turn. This contention is unsupported by objective evidence. The only evidence of a turn-signal violation is the subjective statement of the officer given with no context whatsoever by which to evaluate the credibility of the claimed observation. The

1

Constitution requires more.

The Kansas Supreme Court has made clear that an officer's uncorroborated assertion of a traffic violation, when contradicted by objective evidence, does not constitute reasonable suspicion. *Jarvis v. Kan. Dep't of Revenue*, 312 Kan. 156 (October 9, 2020). In *Jarvis*, the officer asserted that he had observed traffic violations that established probable cause or reasonable suspicion for the stop. However, upon review of the officer's dashcam video, the violations were not observed. Instead of showing the violations, the video contradicted the officer's testimony. *Jarvis*, 312 Kan. at 172-173. In finding that the stop was unlawful, the Court concluded that "without the traffic infractions, the Officer articulated no credible reasonable suspicion justifying the stop and initial encounter." *Id*. at 173.

Here, the video submitted by Officer Kampling lacked any observable traffic violation. Of import, the video reveals that the officer was some distance away from Mr. Costello. The officer traveled at a speed sufficient to "catch up" to the location of Mr. Costello's vehicle. USA-00001352. Because of the distance and speed of the officer's travel, it is difficult to deduce when any alleged violation occurred and how it was possible for the officer to have observed it. Based on the objective evidence available, the Government's argument fails because the officer lacked credible reasonable suspicion to justify the stop.

The Government attempts to salvage the stop by pointing to the Malibu's contact with the curb as an independent ground for the stop. It attempts to bolster its position by citing to various holdings. However, a close examination of those cases reveals that the Government's own authority requires more than a single instance of touching a curb to establish reasonable suspicion of impairment. The cases cited by the Government all involved sustained erratic driving, including straddling lane lines, drifting across fog lines for extended distances, or

repeatedly swerving.    A single, momentary curb strike while completing a turn in an urban setting does not rise to the same level.

Moreover, the Government ignores that striking the curb while turning is not a traffic violation under K.S.A. § 8-1545(1), which only requires that a right-hand turn be made "as close as practicable" to the curb.    Incidental contact in the execution of that turn is not a violation of K.S.A. § 8-1545(1).    Incidental contact is also not the erratic, sustained lane-departure that the Tenth Circuit has recognized as supporting an impairment stop.

In sum, the Government has not met its burden of proving that the traffic stop was supported by probable cause or reasonable suspicion.    Because the stop was unlawful, all evidence flowing from it is subject to suppression as fruit of the poisonous tree.    *Wong Sun v. United States*, 371 U.S. 471 (1963).

**B.  The Odor of Marijuana Did Not Provide Probable Cause to Search the Vehicle**

The Government argues that the odor of marijuana reportedly detected by officers provided independent probable cause to search the vehicle.    *United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010).    Mr. Costello does not dispute that rule.    What the defense disputes is whether the Government can carry its burden of proving that Officer St. Vrain credibly detected a marijuana odor sufficient to justify a full vehicle search in these circumstances.

The only marijuana found in the vehicle was a small amount of loose flakes commonly called "shake".    It was located on the center console and in a cup holder.    USA-00001283 and USA-00001286.    Officer St. Vrain's report and the Government's response contain no description of the strength of the odor or any other detail that would assist the Court in evaluating the credibility of the claim.    For example, in *United States v. Downs*, 151 F.3d 1301, 1302 (10th Cir. 1998), law enforcement searched the car and found 200 pounds of marijuana in

3

the trunk.    *Downs* involved circumstances where the odor claim was credible considering the quantity of marijuana ultimately discovered.    Here the minimal quantity of only a sprinkling of flakes raises serious questions about whether any officer standing at the driver's door could have detected a noticeable odor emanating from the car's interior.    The Government does not address this factual gap.    The Court should consider this discrepancy in evaluating the Government's probable cause showing.

### C.  The Plain Feel Doctrine Does Not Justify the Seizure

Officer Kampling's search far exceeded the boundaries of a lawful frisk.    It was not a pat-down for officer safety, but instead an exploratory search for evidence without probable cause and without a warrant.    The Government cites *Minnesota v. Dickerson*, 508 U.S. 366 (1993), as authority supporting the seizure of the pills found during the officer's contact with Mr. Costello.    The Government's interpretation of *Dickerson* is inapposite to the facts of this case. *Dickerson* held that the plain feel doctrine permits seizure of an object only where its identify is immediately apparent to the officer by touch and not after additional manipulation designed to determine the object's nature.    *Dickerson*, 508 U.S. at 375.    The Supreme Court in *Dickerson* suppressed the evidence because the officer exceeded the scope of the pat-down.    The officer determined that the lump he felt was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket."    *Id*. at 379.    This case presents the same constitutional violation and should result in the same remedy of suppression.

The Government failed to address the defense's core factual arguments on this point. Officer Kampling's own report states he felt a "hard bulge" that he concluded was "contraband of some sort based on the initial feel."    USA-00001286.    However, the video shows Officer Kampling performing an initial pat-down, handcuffing Mr. Costello, and then performing a

further pat-down after which he told Officer St. Vrain that he felt "something" without identifying the object as pills or a weapon or as contraband.    The additional search of Mr. Costello's person was done forcefully enough that Mr. Costello's pocket change is seen flying out of his pocket.    Only after the further manipulation to include shaking, squeezing, and tugging at Mr. Costello's clothing, did pills fall to the ground. The Government offered no response to this sequence of events.

The video is fatal to the Government's plain feel argument for two reasons.    First, the identification was not "immediate" as *Dickerson* requires.    Officer Kampling himself was uncertain enough about the nature of the object that he did not identify it as pills during the initial pat-down or even to Officer St. Vrain in the immediate aftermath. Second, the subsequent shaking, squeezing, and tugging of Mr. Costello's shorts constituted independent manipulation beyond the scope of a weapons frisk, which is precisely the conduct *Dickerson* prohibits.

### D.  The Collective Knowledge Doctrine Does Not Cure the Deficiencies

The Government argues that the collective knowledge of the investigating officers drawn from months of surveillance and the drug investigation supplied the reasonable suspicion and probable cause that the stopping officer may have lacked independently.    The defense does not dispute the legal validity of the collective knowledge doctrine as a general matter.    However, the collective knowledge doctrine has limits that the Government overlooks.    For the collective knowledge doctrine to apply, there must be evidence of actual communication, a directive or instruction from a supervising or coordinating officer to the stopping officer.    *United States v. Whitely*, 680 F.3d 1227, 1234 (10th Cir. 2012).

The Government offers no factual showing that ATF or WPD supervisors communicated a directive to Officer Kampling or Officer St. Vrain to stop Mr. Costello's vehicle and perform a

pat-down based on the cumulative investigation.    Rather, the Government's own account indicates that Officer Kampling himself decided to stop the vehicle after allegedly observing the turn signal violation, which was an independent observation unconnected to any directive flowing from the investigation.

Even if the doctrine applied, it would only provide support for reasonable suspicion to conduct an investigative stop and pat-down for officer safety.    It would not serve as a basis to conduct a full vehicle search and an invasive pat-down for evidence.

### E.  The Good Faith Exception Does Not Apply

Lastly, the Government argues, in the alternative, that even if constitutional violations occurred, the good faith doctrine bars application of the exclusionary rule based on an asserted good-faith belief that they acted lawfully.    The Government's argument fails.    The videos make clear that the officers acted deliberately.    Officer Kampling performed the initial pat-down.    He did not immediately identify the object as a weapon or as contraband.    He then placed Mr. Costello in handcuffs and proceeded to engage in deliberate manipulation of Mr. Costello's shorts until the object fell to the ground.

With all due respect to Officer Kampling, even though he referenced the object as "hard pills" in his report, in the video he makes no such identification or is ever heard to even speculate that the object might be pills.    He identifies the object to Officer St. Vrain only as "something". The video demonstrates that the officer was determined to manipulate Mr. Costello's shorts until the "something" fell to the ground.    There is no question that his conduct was deliberate.    He was not acting on any good-faith belief or any ambiguity in the law.    Accordingly, the exclusionary rule does apply, and the evidence should be suppressed.

## II. CONCLUSION

For the reasons set forth in the Motion to Suppress and herein, Mr. Costello respectfully requests that this Court suppress all evidence obtained as a result of the unlawful traffic stop of July 11, 2024.

Respectfully submitted,

/s/Sylvia B. Penner
SYLVIA B. PENNER
Sup. Ct. No. 21640
Penner Lowe Law Group, L.L.C.
245 N. Waco, Ste 125
Wichita, KS 67202
Telephone: (316) 847-8847
Fax: (316) 847-8853
E-mail: spenner@pennerlowe.com

CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2026, I electronically filed the foregoing REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to each counsel of record in this case.

/s/Sylvia B. Penner
SYLVIA B. PENNER
Sup. Ct. No. 21640
Penner Lowe Law Group, L.L.C.
245 N. Waco, Ste 125
Wichita, KS 67202
Telephone: (316) 847-8847
Fax: (316) 847-8853
E-mail: spenner@pennerlowe.com